United States District Court

Western District of Kentucky

Paducah Division

Civil Action No. 5:17-cv-P138-TBR

FILED
VANESSA L. ARMSTRONG, CLERK
APR 02 2018
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

DION L. LUTHER                    Plaintiffs

v.

Randy White et al.               Defendants


Plaintiff's memorandum
and Production of evidence


\* \* \*   \* \* \*   \* \* \* \* \* \*


Comes now the Plaintiff, Pro Se
and with memorandum of law and
Production of evidence in response to
Defendants motion for Summary Judgment.

(i)

I. Claims under RLUIPA and First Amendment

A. Turban

Under RLUIPA, no government may impose a substantial burden on the religious exercise of a prisoner, even if it results from a rule of general applicability, unless the government demonstrates that the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. 2000cc-1.

As a practioner of the Bobo[A]Shanti[1] Order, which is proclaimed the 'Priestical House of Ras Tafari', Plaintiff is commanded to 'wrap up'[2] and become a ministering Priest of the Blessed Trinity: GOD-KING, Emperor Haile Selassie I; GOD-PROPHET, Right Honorable Marcus Mosiah Garvey; and GOD-PRIEST, Right Honorable King Emmanuel Charles Edwards. The Bobo[A]Shanti recognize themselves as the true Israelites, and adhere to the Priestly Uniform mentioned in the Holy Bible.

[1] [A]shanti and Shanti interrogacable.     [2] wear a turban     (2)

Furthermore, the Bobo High Priest Emmanuel, who is seen as God in his priestly character, promulgated laws and commandments that acknowledge the use of the turban as religious exercise, and also it acknowledges that the suspension from wearing the turban is a sign of punishment (see exhibit #3, and 4, #11 [Principles of Our International government), and # 15

The turban that the Plaintiff is commanded to wear can be described as a long cloth made of natural fiber, especially 100% cotton, which is anywhere from 60 inches to 96 inches long and wide. The length the Plaintiff seeks is 6 feet long and wide, which does not exceed the length allowed for members of Sikh faith. The only difference between a Bobo [A]Shanti turban and the Sikh's turban would be the colors. For the Bobo, white robe and turban are to be worn on Monday, wednesday, and Sabbathday (saturday); Black robe and turban is worn during the evenings of Sunday, tuesday, thursday, and on friday white robe and black turban is worn (see exhibit #11, and exhibit # 2). Furthermore, it is a Bobo taboo to go without a 'Crown'(turban), and those not properly attired can not perform religious services.(see exhibit #3, and 4),

(3)

"If a male is absent from roll call for three days, his turban may be "lifted" meaning he isn't allowed to wear his turban for a given period of time".

Therefore, for Plaintiff to go without a turban would continue to violate the commandments of his God, and cause irreparable immorality and sin, and the denial of a turban by the Defendants would violate Federal laws and Statues (see RLUIPA 42 § U.S.C. 2000cc-1). However, the Defendants have argued that "Plaintiff has failed to provide any proof that a turban is required to practice his religion" (Response to Motion for a a Preliminary Injunction [pg. 2]). Defendants arguement is without merit. Plaintiff has stated that he is a practioner of the Bobo [A]Shanti and wearing a turban is essential to that Order and their religious exercise. RLUIPA 42 § U.S.C. 2000cc-5 states

"In general -- The term "Religious exercise" includes any exercise of religion, whether or not compelled by, or central, to a system of beliefs".

Therefore "[b]ecause Plaintiff believes he is required to wear his turban at all times, the Court holds that Plaintiff

(4)

has demonstrated a Substantial burden on his religious exercise" see Sigh v. Goord, 520 f. Supp. 2d 487, 503 (S.D.N.Y. 2007).

Furthermore, Defendants have failed to produce any proof that denying Plaintiff a religious turban is in furtherance of a compelling governmental interest. And likewise they have also failed to show how the denial of a religious turban is the least restrictive means of furthering that compelling governmental interest. Irrespect -ive of the Defendants arguements, Summary Judgment Should not be granted, for the failure to comply with Federal laws and Statues.

Defendants raise a speculation that because Plaintiff continues to wear the headgear provided to practioners of the Rastafari faith, in general, by the KDOC that it is "Sufficent to accomplish Plaintiff's goal of covering his dreadlocks" (Defendants' Memorandum in support of motion for Summary Judgement [Pg. 16]). Though it is true that Plaintiff wears the Rastafari headgear provided in the KDOC religious reference manual, which is labeled as a 'Crown' but in actuality is a 'tam-o- Shanter', it is fraudlent that it is Sufficent

(5)

just because it merely covers his 'dreadlocks'. The 'Crown' listed in the KDOC religious reference manual is the only head-gear that Plaintiff has been permitted to wear where he can keep his dreadlocks covered at all times, without having to take it off in certain areas of the institution. If Plaintiff felt that the 'Crown' was sufficent he wouldn't request for a turban.

     The central importance behind 'wrapping up' is the symbolism that is seen by the Bobo, even the traditional way of wrapping the turban is symbolic. These symbolic ritualistic expressions can not be fulfilled by wearing the head-gear that is currently permitted by the KDOC. The turban symbolizes the 'Crown' of the Son of YAH, Emmanuel, and the Plaintiff can not be recognize as a Bobo Prophet, or Priest unless he is adorned with a turban. Thus, the turban is also use to distinguish the Bobo from other Rasta houses. (see exhibits # 6, 7, 10[pg.4], 12, 13, 16, 17, and 18)

     The United States District Court for the Southern District of New

(6)

York agreed

   "This court further finds that wearing a turban is "Central or important" to Plaintiff's Rastafari faith". (Rossi v. Fischer, 2014 U.S. Dist.) Furthermore, that court also admitted "Plaintiff can likely show that the denial of permission to wear a turban while incarcerated constitutes a substantial burden of First Amendment right to exercise his religion". At the conclusion of that case the court determined and recommend -ed the Plaintiff be allowed to wear turban.(see Rossi v. Fischer, 2015 U.S. Dist.) Other Courts understood that "Scrutiny extends only to whether a Claimant sincerely holds a paticular belief and whether the belief is religious in nature." Ford, 352 F. 3d at 590; (citing Jolly 76 F. 3d at 476). Therefore, a Claimant does not have to prove that Something is apart of their religion, a Claimant only has to show that his belief is sincere.

   The Plaintiff has done more than what is required for him to do in accordance with RLUIPA. Not only has the Plaintiff expressed his sincere

belief in wearing a turban he has brought forth evidence that proves that a turban is central to his Bobo [A]shanti religion. And though the courts are "ill-equipped to sit in judgment on the verity of an adherents religious beliefs" (Ford v. McGinnis), the Plaintiff has shown his sincerity to the belief that wearing a turban is a neccessity to the Bobo way of life.

The denial of a turban substaintally burdens the Plaintiffs religion because it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs" (Jolly v. Coughlin, 76 F. 3d 468, 477 (2d. Cir. 1996)). Plaintiff is directed through the Principles of the Bobo[A]shanti to only attend, and minister in religious services, within, and without the Temple (church); with the adornation of a turban, and especially on Temple grounds. Therefore, without a turban, which symbolizes the specific headdress of GOD-PRIEST, Emmanuel, Plaintiff can not properly participate in the 3 prayers a day, and religious ceremonies. Also, Plaintiff can never be recognize as a Prophet or Priest until he is crowned with "the Crown

(8)

Of Glory"(turban). So, while Plaintiff professes, and adheres to the belief system of Bobo[A]Shanti, because he remains 'Uncrowned' he is not 'Offically' a Bobo.

It was founded that "...when the government fails to enact feasible measures to restrict Other conduct producing Substantial harm or alleged harm of the Same Sort, the interest given in Justification of the restriction is not Compelling" (Church of Lukumi Babalu Aye v. City of Hialean, 508 U.S. 520, 546-47)

Therefore, when the Plaintiff requests the Same texture, and size turban as the Sikh's turban, only differing in the Rasta colors which are allowed for Rasta Crowns", there could be no compelling interest in regards to institutional Security. Fifth Ave Presbyterian Church, 2004 U.S. Dist. Lexis 22185 at *39 ("[A] law cannot be regarded as protecting an interest 'of the highest Order'... when it leaves appreciable damage to that Supposedly Vital interest unprohibited.")

"Free exercise Claims of Prisoners are judged under a

(9)

'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. On a constitutionally-based free exercise claim, the court must assess '(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officals infringes upond the religious belief; and (3) whether the challenged practice of the prison officals furthers some legitimate penological objective" Orafan, 411 F. Supp. 2d at 161.

It is undisputed that wearing a turban is apart of Bobo[AJShanti 'livity'(lifestyle), it is also undisputed that plaintiff believes he is a Bobo. However, the Defendants deny him the permission to wear a turban without noting a 'legitimate penological objective'. And though the "Plaintiff has shown that the removal of his turban substantially burdens his sincerely held religious beliefs"(Morgan v. City of New York., 12-cv-704(WFK), 2014 U.S. Dist. Lexis 94693, 2014 WL 3407714, at *8[E.D.N.Y

(10)

July 10, 2014]). Thus the Defendants have violated the First Amendment by not allowing Plaintiff to utilize a turban, and they have not met the burden of legally justifying their decision. Sigh v. Goord, 520 F. Supp. 2d 487 ("Given that the Defendants have not identified any specific security risk associated with allowing Plaintiff to wear a turban... this Court holds that Defendants have failed to demonstrate a compelling interest...") As a result the motion for summary judgment should be dismissed.

B. Dreadlocks

In Ware v. La. Dep't of Corr. 866 F.3d 263 it was found

"An inmate, who had dreadlocks as apart of his religion was entitled to recovery in his RLUIPA suit because the Correctional facility failed to show that its policy prohibiting dreadlocks, which substantially burdened the inmates sincere religious beliefs, was the least

(11)

restrictive means of serving a
interest."

As a Bobo [A]Shanti, Plaintiff
is obliged to 'take' the Nazirite Vow
and let the locks of his hair on his
head grow in conformity with Numbers,
Chapter 6, verse 5, of the Holy Bible.
RasTafari, in general, interpret "locks" as
kinky, matted, and ropelike strands of hair
which, in RasTafari technique, grow naturally
without combing and use of chemicals.
As a member of the Ethiopian race, the
Plaintiff's hair is 'naturally' nappy and
curly. Therefore, the Plaintiff's hair will
inevitably form the style known as,
dreadlocks after months and years
of growing it.

In RasTafari conception no
Rasta-man can't go to Mt. Zion (Mount Zion/
heaven) if he does not have dreadlocks.
See exhibits #8 and #9. The dreadlocks
also symbolizes 'the Crown', which is
a emulation of the King, Emperor Haile
Selassie I. Therefore, for a Rastaman to
have his hair 'sheared' symbolizes, not
only, the Plaintiff being uncrowned, but
also his unworthiness to enter Zion.
In RasTafari conception, if a Rasta

(12.)

was to die without dreadlocks he would not enter into Zion. See exhibit #8 and #9. The Kentucky Department of Corrections, Religious Reference Manual acknowledges that a medical Prohibition for Ras Tafari is "shaving" and "trimming". See exhibit #20.

When the defendants deny the Ras Tafari the ability to wear dread-locks at all times substantially burden the practioners sincerely held religious beliefs. Likewise, when the defendants shaved off the plaintiff dreadlocks, in a arbitrary fashion, substantially burdens his religion, and Causes 'irreparable harm' due to the fact that the Plaintiff could have 'died' without his dreadlock which would hinder him from gaining spiritual salvation. Furthermore, the Plaintiff was retarted in spiritual strength when his dreadlocks was shaved, which is similar to what happened to the Prophet Samson, who also had 'seven locks'.

In RLUIPA, a substantial burden on religious exercise can not be imposed if it is not in furthering of

a compelling governmental interest
42 § U.S.C. 2000cc-1. The defendants have
failed to state the compelling govern
-mental interest which made defendants
substantially burden his religious
exercise (the Plaintiff's) by shaving off
his 'sacred dreadlocks'. Defendants
have argued that
                    "his dreadlocks were only
shaved after he was admitted into a
Segregation Unit." (see Defendants Motion
for Summary Judgment [pg. 6]),
therefore him being in a Segregation
Unit made violating the Plaintiff's
religion in furtherance of a Compelling
governmental interest.
                    Plaintiff alleges that the
defendants policy on dreadlocks is
underinclusiveness and without merit.
In Ware, 866 F. 3d at 270 the Court held
" a policy's underinclusiveness can raise the
inference that the interest allegedly
Served by that policy are not actually
Compelling." The defendants have failed
to address the difference between
wearing dreadlocks in General Population,
and wearing dreadlocks in a Segregation
Unit. There is no policy against inmates

(14)

wearing dreadlocks in general population.
"A policy is underinclusive if it fail[s]
to cover significant tracts of conduct
implicating [its] animating and putatively
compelling interest". Yellowbear v. Lampert,
741 F. 3d 48, 60 (10th Cir. 2014).

Defendants have held that the
Plaintiff is able to hide contraband in
his dreadlocks. In the KDOC's policies
and procedures 'Search policy' 9.8
officals are permitted to perform
a search on a inmate at anytime, but
the defendants have failed to give
reasons why such a policy could
not be carried with respect to the
Plaintiff. Such a search would also
be the "least restrictive means" of
furthering a governmental interest. 428
U.S.C. 2000cc-1. Furthermore, the Plaintiff
alleges that the defendants have also
failed to state why dreadlocks which
can be used to hide contraband is
allowed in general population, but
not in a segregation unit.

In Church of the Lukumi Babalu
Aye, Inc. v. City of Hialeah, 508 U.S. 520, 547,
113 S. Ct. 2217, 124 L. Ed. 2d. 472 (1993)
the courts agreed that "a law cannot

(15)

be regarded as protecting a[]
[compelling] interest ... when it
leaves appreciable damage to that
supposedly vital interest unprohibited."
Defendants have not provided an
adequate explanation for its differential
treatment concerning dreadlocks, as well
as a turban. The defendants policy
does not actually advance a compelling
interest because defendants do not
advance the supposedly compelling
interest wholly.

　　　　Furthermore, the defendants
have failed to enforce their own
policy concerning dreadlocks in Segregation
Units. A previous Ras Taffari who was
admitted into a Segregational Unit
was permitted to wear his dreadlocks
for his entire stay in 3 cellhouse, Re
-strictive Housing Unit (RHU), and was
only shaved when moved out of 3
cellhouse fifty plus days later. See
Exhibit #22. Defendants have yet
to provide reasons why one Rasta
was allowed to keep his dreadlocks,
which may be able to hide contraband,
and another not, in RHU.

　　　　Defendants have also failed

(16)

to address the fact that the former Commissioner, LaDonna H. Thompson promulgated memorandum a policy which states

"Effective immediately, the practice of mandatory haircuts and shaves for inmates entering Segregation Status shall cease," see exhibit #21.

Defendants are going against policy by mandatorily shaving Rastafari practioners dreadlocks, while arguing that they are enforcing policy.

Due to these facts the defendants Motion for Summary Judgment should be denied.

C. Defendant Randy White

Defendant Randy White, as the Warden at KSP, is responsible for the Promulgation of policies and memorandums within the institution. Furthermore, Defendant Randy White promulgated the memorandum that substantially burdens his religious practice and belief of wearing dreadlocks at all times. In 2014 a policy was promulgated

(17)

by Commissioner, LaDonna H. Thompson, that put a 'end' to all mandatory haircuts, but shortly thereafter Defendant. Randy White, promulgated a institutional policy, that discriminates against "dreadlocks", "Corn rolls", "plaits", all hairstyles being indigenous to the African race. (see exhibit #21[LaDonna memorandum]).

    In Rossi v. Fisher, 2015 U.S. Dist. "The court agreed with the Plaintiff and found that because Plaintiff showed that defendants made certain contributions to the formulation of policy, he had adequately established personal involvement with regard to the defendants. Id at 513.

    In Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995) the Courts held personal involvement can be shown when "the defendants created a policy or custom under which unconstitutional practices occured, or allowed the continuance of such policy or custom" It is undisputed that Defendant Randy promulgated policy discriminating against dreadlocks without considering

(18)

the practioners of Ras Tafari. It
is also undisputed that without
such policy the Plaintiff's dreadlocks
would have not been sheared. There
fore, he shall remain a Defendant

D. Jesse Coombs and Terry Peede

Defendant, Terry Peede, who
is a Lieutenant at KSP, directly participated
in the unconstital act of Shearing the
plaintiff sacred dreadlocks when he
authorized and supervised the Shearing.
Furthermore, Defendant, Terry Peede, was
aware that the Plaintiff was a
Proclaimed RasTafari when he authorized
and supervised the 'atrocity'. The Courts
ruled in Colin v. Coughlin, that personal
involvement is shown when "the defend
~ant participated directly in the alleged
constitutional violation,". Defendant, Terry
Peede has clearly participated in the
Constitutional violation. Defendant, Peede
was not obliged to authorize the
Shearing of the Plaintiff's dreadlocks,
he instead acted on his own free
will inviolation of RLUIPA, and First
Amendment Clauses.

(19)

Defendant Jesse Coombs, who was at the time of the incident, a Sergeant also directly participated in the unconstitutional violation. When the Plaintiff stated he was a Bobo [A]Shanti RasTafari and would not comb out his dreadlocks, Defendant Jesse Coombs acted arbitrarily by detaining him in a isolated area. Defendant, Coombs failed to protect the religious liberties and beliefs, but he rather aided the Defendants in the malconstitutional acts performed. The Colon factors are relevant with respect to Jesse Coombs seeing he participated directly in the acts. There fore, he should remain a Defendant, along with Terry Peede.

E. Defendant, Gage Rodriguez.

Gage Rodriguez, who is a Sergeant at KSP directly participated in the Shearing of the Plaintiff's dreadlocks in which unconstitutional acts took place. Defendant, Rodriguez sheared off the Nazirite Vow from the head of Plaintiff, and by doing so violated

(20)

the constitution. Defendant, Gage
Rodriguez was aware of the
Plaintiff's religious preference, and
still voluntarily shaved the Plaintiff's
dreadlocks which retarded the
Plaintiff spiritually, and violated
RLUIPA and First Amendment; free
exercise. Therefore, he should remain
a Defendant.

F. Defendant Dan Smith

Defendant, Dan Smith, who
is the acting Chaplain; Program Director;
and Grievance Coordinator at KSP, is
alleged to have violated the RLUIPA
and the First Amendment; Free Exercise,
by denying him his religious turban:
Plaintiff spoke to Defendant, Dan Smith,
about the purchasing of a turban,
which was approved by the now
deceased Chaplain, John Neece, and Steven
Ford, Deputy Warden of security. Defendant,
Dan Smith denied his request for
such a religious turban, and Plaintiff
filed grievance(s). [DN.1].
Plaintiff exhausted admin
-istrative State remedies on Chris

Kleymeyer; Dan Smith; and Randy White concerning the denial of a religious turban. The Plaintiff originally filed a grievance on Chris Kleymeyer, but Defendant Dan Smith intercepted it and answered the informal resolution his self. Defend-ant Randy White later issued a memo-randum substantially burdering the Plaintiff's religious liberty of wearing a religious turban, along with James Erwin. Therefore, Dan Smith, as a Chaplain, had knowledge of the unconstitutional practices a failed to "remedy the wrong" (Colon v. Coughlin, 58 F.3d 865, 874 [2d Cir. 1995]) after being informed of the violation through a report or appeal. Therefore, the Defendant, Dan Smith should remain a defendant.

2. Exaustion of adminstrative state remedies.

A. Defendant Dan Smith

In the United States District Court it was agreed that
"... despite the fact there was no identification of the individuals

(22)

involved. Other than C.T.O. V. Lynn who is not a party to this action. the prison addressed the grievance on the merits, upholding the policy."(Sublett v. White 2014 U.S. Dist. Lexis 24926)

The defendants allege that because the Plaintiff did not mention Defendant, Dan Smith name in his grievance that he failed to exhaust administrative state remedies, Defendants Claim is without merit

It was also held in the Sixth Circuit that a "inmate properly exhausted his adminstrative state remedies, not with standing his failure to include the staff members' names in his Step 1 grievance" (Reed-Bey, 603 F. 3d. at 325,-26).

"The Sixth Court has squarely held that when a prison addresses the merits of an inmates grievance, the prisoner has exhausted his administrative remedies, notwithstanding the grievance's technical deficiency" (Reed-Bey, 603 F. 3d. at 325-26)

B. Defendants Terry Peede and Randy White

(23)

In Sweezer v. Heyn 2015,
it was found by the courts that,
"Sweezer filed a grievance,
contending the prison was miscalculating
his sentence. The prison addressed the
merits of his complaint. Sweezer then
appealed and filed a Step II grievance.
Once more the prison addressed the merits
of Sweezer's grievance by explaining
how they calculated his sentence range.
Sweezer appealed once more and the
prison again addressed the merits. The
prison had a fair shot at correcting
its own alleged mistakes..... Accordingly
the court finds that Sweezer exhausted
his administrative remedies."
De     Defendants allege that because
the Plaintiff did not mention Defendants
White and Peede that the Plaintiff failed to
exaust administrative remedies. This is
alleged without merit.
          Jones v. Bock 549, U.S., held
exhaustion was not per se inadequate
simply because an individual later sued
by a Prisoner was not named in the
Prisoners grievances as (1) nothing in Statue
imposes a "name all defendants requirement";
(2) compliance with prison grievance

(24)

Procedures, therefore, was all that was required by the PLRA to properly exhaust; and (3) although a "name all defendants" rule might promote early notice to those who might later be sued, that had not been thought to be one of the leading purposes of exhaustion requirement"

Therefore, Defendants White and Reede Should not be dismissed as Defendants.

3. Qualified Immunity

"Government officials performing discretionary functions are afforded qualified immunity, Sheilding them from civil damages, as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a resonable person would have known." Poe v. Hayden, 853 F.2d 418, 423 (6th Cir. 1988)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed 2d 396 (1982)

The Defendants have not yet

Shown that restricting Plaintiff from wearing a religious turban do not violate Clearly established law. Nor have the Defendants Shown that restricting Plaintiff from wearing religious dreadlocks do not violate Cleary established law.

An inmate has a "Clearly established right to be free of unjustified burdens upond free exercise rights". Salahuddin v. Dalsheim, 94-cv-8730 (RWS), 1996 U.S. Dist. Lexis 9531, 1996 WL 384898, at *12 (SDNY July 9, 1996); see also Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L Ed. 2d 64 (1987).

Also see, Diggs v. Marihah, 11 - cv - 6382 (PAE), 2012 U.S. Dist. Lexis 38483, 2012 WL 934523, at *5 (SDNY March. 20, 2012.) [denying defendants' motion to dismiss on the basis of qualified immunity, where Plaintiffs religious beliefs were reasonably related to a legitimate penological interest was not yet developed].

Thus, defendants Should not be entitled to qualified immunity.

4. Claims for monetary relief

All claims concerning monetary relief Shall continue. See Van Whye v. Reisch, 581 F.3d 639.

Conclusion

Wherefore, Plaintiff respectfully request that this court deny Defendants motion for Summary Judgment.

DION LUTHER

Kentucky State Pen.
266 Water Street
eddyville, Ky, 42038

3/25/18

(27)

DION LUTHER
#275398 6E11
HSP
266 Water Street
Eddyville, Ky, 42038

FILED
VANESSA L. ARMSTRONG, CLERK
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY
APR 02 2018

Kentucky State Penitentiary

Uncensored Inmate Mail
Not Responsible For Contents

Vanessa L. Armstrong
U.S.D.C
501 Broadway, ste.127
Paducah, Ky, 42001

