UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-138-TBR

DION L. LUTHER                                                                                    PLAINTIFF

v.

RANDY WHITE, et al.                                                                          DEFENDANTS

### MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Second Motion for Summary Judgment filed by Defendants Randy White, Dan Smith, Terry Peede, Jesse Coombs, Gage Rodriguez, and Skyla Grief. (R. 64). Plaintiff Dion L. Luther, proceeding *pro se*, has responded, (R. 81), and the Defendants' time to reply has long since passed. As such, this matter is ripe for adjudication and, for the following reasons, **IT IS HEREBY ORDERED** that Defendants' Motion, (R. 64), is **GRANTED IN PART AND DENIED IN PART.**

With its ruling on the Defendants' Second Motion for Summary Judgment, the Court also **DENIES AS MOOT** Luther's Motion for Preliminary Injunction, (R.11), and **DENIES** Luther's Motion for Leave to File an Amended Complaint, (R, 24).

### BACKGROUND

Inmate and *pro se* Plaintiff Dion Luther is a Bobo Shanti Rastafari. (R. 1, Pl.'s Compl.). He is also a Kentucky State Penitentiary ("KSP") inmate. Luther alleges various constitutional and statutory violations while incarcerated, all concerning his Bobo Shanti Rastafarian faith.

### A. Luther's Initial Claims

### 1. Luther's Dreadlocks are Allegedly Forcibly Removed.

Luther arrived at KSP on January 12, 2017 with his hair in dreadlocks. (*Id.*). Upon arrival, Luther was to be placed directly in KSP's Restrictive Housing Unit. (*Id.*). During processing, Luther was approached by Defendant Jessie Coombs and allegedly told that he must comb his dreadlocks out. (*Id.*). Luther refused, asserting that he was required to wear his hair in dreadlocks pursuant to his Bobo Shanti Rastafarian faith. (*Id.*). Upon refusal, Coombs placed Luther in a security cage. (*Id.*). Once in the cage, Defendant Terry Peede again told Luther to comb his dreadlocks out. (*Id.*). Again, Luther refused on religious grounds. (*Id.*).

At this point, Peede produced a memorandum from Warden White and showed it to Luther. (*Id.*). The memorandum allowed restricted housing inmates to have long hair but stated that inmates' hair must "remain free flowing" and prohibited "Weaves, Corn rows, Braids, Dread Locks, Twists, or any other hair style that would hinder or affect the security or operations of the unit." (R. 1 Pl.'s Compl. Ex. 1, Warden White Mem.). Along with the memo, Peede allegedly handed Luther a comb and told him he had thirty minutes to comb his hair out. (R. 1, Pl.'s Compl.). Luther refused to comply. (*Id.*).

After his thirty minutes lapsed, Luther was restrained, and his dreadlocks were cut off by Defendant Gage Rodriguez. (*Id.*). According to Luther, Rodriguez had to yank at his dreadlocks while cutting them off, and the clippers used were unsanitary. (*Id.*). Consequently, Luther allegedly suffered lacerations to the back of his head and developed a rash. (*Id.*).

Luther alleges that the forcible removal of his dreadlocks violated his right to religious exercise under the First Amendment and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"). (*Id.*). Luther further claims that in violently cutting his hair, Gage exhibited deliberate indifference towards his safety and subsequent medical need. (*Id.*).

**2. Luther's Religious Property is Allegedly Confiscated.**

Also upon entering KSP, Luther claims that H.C. Vinson confiscated his medallion and headgear. (*Id.*). Luther was allegedly denied the right to send such confiscated property home through the mail. Luther claims that he wrote a grievance concerning the issue on January 17, 2017, but Defendant Dan Smith never responded to the grievance. (*Id.*). Instead, according to Luther, Dan Smith thwarted his opportunity to properly take advantage of the grievance process. (*Id.*).

Luther claims that the alleged confiscation of his property violated his rights under the First and Fourteenth Amendment, as well as RLUIPA. (*Id.*).

**3. Luther is Allegedly Denied a Turban.**

According to Luther, as a part of his religious faith, he is required to wear a turban. (*Id.*). Allegedly, KSP Chaplin John Neece had agreed to allow Luther to wear a turban. However, before Luther could purchase the turban, Chaplin Neece died. (*Id.*). According to Luther, Defendant Dan Smith is now in Charge of the situation and is denying Luther a turban. (*Id.*).

Luther claims that in being denied a turban, his First Amendment and RLUIPA rights have been violated. (*Id.*).

**4. Luther is Allegedly Denied a Diet in Conformity with His Religious Beliefs.**

According to Luther, he was only served bologna, fruit, milk, and chips during a lock-down at KSP that lasted for some weeks in July. (*Id.*). Luther claims that he is prohibited from eating bologna pursuant to his religious beliefs. (*Id.*). Luther alleges that Skyla Greif informed him that he would have to be satisfied with the substitution offered by the kitchen, and that he would receive

no special meals. (*Id.*). Luther allegedly told Grief that the substitution was what he was requesting. She then stormed away frustrated. (*Id.*). Luther never claims that Grief denied him the substitution. (*See Id.*).

Based on these allegations, Luther claims that his First, Eighth, and Fourteenth Amendment rights have been violated. He also claims a RLUIPA violation.

### 5. Luther is Allegedly Denied Incense.

On September 6, 2018, the Court allowed Luther to supplement his Complaint with a claim against Skyla Grief, Dan Smith, and Chris Kleymeyer. According to Luther, the burning of incense is integral to his Rastafarian faith. (R. 16, Pl.'s Mot. to Supplement Claims). Skyla Grief, Dan Smith, and Chris Kleymeyer allegedly denied him incense. (*Id.*).

Luther Claims that, as such, his rights under the First Amendment and RLUIPA have been violated. (*Id.*).

### B. Claims Dismissed Pursuant to the Court's 28 U.S.C. § 1915A Review.

Because Luther is an inmate seeking relief against governmental entities, officers, and/or employees, this Court reviewed Luther's claims pursuant to 28 U.S.C. § 1915A. Pursuant to that review, the Court dismissed Luther's official-capacity claims for damages, including those arising under RLUIPA. (R. 6). This Court also dismissed Luther's diet related claims against Defendant Skyla Grief. (*Id.*). Finally, the Court dismissed Luther's claims against Daniel Smith related to the grievance process. (*Id.*).

### C. The Settlement Conference Held on January 4, 2019.

After the Defendants' Second Motion for Summary Judgment had been filed, and pursuant to the Court's referral, Magistrate Judge King conducted a settlement conference between the Parties on January 4, 2019. At the Settlement conference, Luther agreed that he is

currently allowed to wear a turban. (R. 89, Judge's Report). Also at that settlement conference, the Defendants agreed that Luther or a third-party would be allowed to purchase frankincense or myrrh incense and donate it to the KSP religious center, if available from an approved vendor, for congregate use in religious ceremonies under the supervision of the KSP religious advisor. (*Id.*). As such, Judge King recommends that Luther's claims related to incense be dismissed. (*Id.*).


**LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a

colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

Defendants Randy White, Dan Smith, Terry Peede, Jesse Coombs, Gage Rodriguez, and Skyla Grief now move for summary judgment. The Court will address the Defendants' arguments, each in turn, as they correspond to Luther's remaining claims.

**A. Luther's Turban Claims**

Luther initially brought claims for monetary damages against the Defendants both in their individual and official capacities under the First Amendment and RLUIPA. (R.1, Pl.'s Compl.). Luther also sought an injunction from the Court, which would allow Luther to wear a turban. This Court has already dismissed all Luther's claims for monetary damages against the Defendants in their official capacities. (R. 6). Furthermore, Luther is now permitted to wear a turban. (R. 88 Judge's Report).[1] As such, Luther's request for injunctive relief is now moot, as is his separate Motion for Preliminary Injunction filed January 8, 2018, (R. 11). This leaves only Luther's First Amendment and RLUIPA claims for monetary damages against the Defendants in their individual capacities. The Court will start with the simpler of the two.

---

[1] The Court notes from Magistrate King's Report that there may be some issue as yet to be resolved regarding the specific color of the Turban at issue. The Court finds the Turban's color to be a distinct and separate issue from the one raised in Luther's Complaint. Luther's Complaint concerns being "denied [] the opportunity to wear [a] turban." If Luther has an issue with the color of the turban provided, this represents a separate claim, which he must properly exhaust through the KSP grievance process.

Luther's RLUIPA claims for money damages against the Defendants in their individual capacities must be dismissed. The law is settled. RLUIPA does not allow an inmate to collect monetary damages from defendants sued in their individual capacities. *See Hardy v. Agee*, No. 14-2230, 2015 U.S. App. LEXIS 23370, at *9 (6th Cir. May 8, 2015) (citing *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014)).

Luther's First Amendment claim for money damages is not as straightforward. The Defendants argue they are entitled to summary judgment because Luther failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), and because they are shielded from financial liability by qualified immunity. Exhaustion under the PLRA is a "threshold issue" and a "perquisite or precondition for bringing suit in any court." *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). As such, the Court must address this issue first.

The PLRA states, "No action shall be brought with respect to prison conditions under section 1983 of [42 U.S.C.], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA. *see Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). In order to exhaust their available remedies, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. At KSP, Kentucky Corrections Policies and Procedures ("CCP") 14.6 governs the grievance process. Pursuant to CCP 14.6, the inmate must prepare and file a grievance, and the grievance proceeds first to an "informal resolution stage." (R. 64, Def.s' Second Mot. for Summ. J., Ex. C, CPP 14.6(II)(J)(1)(b)). To

continue the process, the inmate must request a review by the Grievance Committee. (R. 64, Def.s' Second Mot. for Summ. J., Ex. C, CPP 14.6(II)(J)(2)). Thereafter, the inmate must appeal the grievance committee's decision to the Warden and then to the Commissioner of the Department of Corrections. (R. 64, Def.s' Second Mot. for Summ. J., Ex. C, CPP 14.6(II)(J)(3)-(4)).

The Defendants argue that Luther failed to exhaust his administrative remedies for two reasons: First, Luther filed suit before completing the grievance process described above, and second, Luther failed to name individual Defendants at various stages of the grievance process. The Court will address the Defendants' exhaustion arguments one at a time, starting with their argument that Luther failed to complete the grievance process prior to filing the instant lawsuit.

KSP Grievance Coordinator Daniel Smith avers that while Luther may have filed several grievances relating to his turban, he only appealed one—Grievance No. 17-10-010-G. (R. 64, Def.s' Second Mot. for Summ. J., Ex. A Aff. of Daniel Smith). Smith further avers that while Luther claims to have mailed the appeal on September 29, 2017, he did not receive the appeal until October 3, 2017. (*Id.*). Luther mailed his complaint on September 12, 2017. (R. 1, Pl.'s Compl.). Thus, according to the Defendants, Luther failed to exhaust his administrative remedies prior to filing suit, and his turban claims must be dismissed.

Luther does not dispute the fact that he only appealed Grievance No. 17-10-010-G. Nor does Luther dispute the Defendant's alleged and supported timeline, which has Luther filling the instant lawsuit before he appealed his grievance. Instead, Luther claims that he attempted to exhaust his remedies prior to filling suit, but that Grievance Coordinator Daniel Smith "thwarted him from taking advantage of the grievance process." (R.81, Pl.s' Resp.). Therefore, by Luther's account, his failure to exhaust must be excused.

PLRA Section 1997e(a) requires that available administrative remedies be exhausted *prior* to the commencement of an action in federal court. *Webb v. Ky. Dep't of Corr.*, Civil Action No. 06-234-JMH, 2006 U.S. Dist. LEXIS 88356, at *6 (E.D. Ky. Dec. 6, 2006) (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)) (emphasis added). In other words, "[a]n action is not properly before a federal court when the prisoner is attempting to exhaust his administrative remedies during the pendency of his federal action." *Id.* Thus, the Defendants are correct. Luther must have fully completed the process laid out by CCP 14.6 before he filed suit. Otherwise, the Court must dismiss his claim. *See Freeman*, 196 F.3d at 641 (dismissing a plaintiff's complaint because he filed suit prior to finishing the exhaustion process). However, Luther is also correct in that "exhaustion is not required 'when prison administrators thwart inmates from taking advantage of a grievance process.'" *Durham v. Sheets*, No. 15-4223, 2016 U.S. App. LEXIS 23992, at *8 (6th Cir. Sep. 20, 2016) (quoting *Ross v. Blake*, U.S. , 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016). Thus, the question is whether Luther has any proof that Daniel Smith indeed thwarted him from exhausting the claims now before the Court.

To support his contention that Smith thwarted his opportunity to properly exhaust, Luther offers one piece of evidence—Grievance No. 17-04-112-G. (R.81, Pl.s' Resp.). Daniel Smith rejected Grievance No. 17-04-112-G because Luther "attached case cite without case cite case number." (R.81, Pl.s' Resp., Ex. 1, Grievance No. 17-04-112-G). According to Luther, there is no requirement that he include any "case cite case number." Therefore, Grievance No. 17-04-112-G's rejection was improper. However, even assuming Grievance No. 17-04-112-G's rejection was improper, there are still several problems with Luther's argument that Grievance No. 17-04-112-G's rejection thwarted him from exhausting the claims at issue.

First, Grievance No. 17-04-112-G arguably doesn't concern the denial of a turban. Under the heading "BRIEF STATEMENT OF THE PROBLEM," Luther claims that he was denied the right to purchase and wear a Star of David. (R.81, Pls' Resp., Ex. 1, Grievance No. 17-04-112-G). While stating the problem, Luther never mentions a turban or that he has been denied the right to wear one. (*See id.*). Luther makes no mention of a turban until, under the heading "ACTION REQUESTED," Luther states, "I ask I be allowed to purchase and wear the symbol of Rastafari, as well as my Rastafari Turban." (*Id.*). This statement is ambiguous. At best it only demonstrates a request for a turban—not that Luther has been denied one. At worst, it suggests that Luther is already allowed to wear a turban, and that he wants permission to wear the symbol of Rastafari in addition thereto. As such, the Court is not entirely convinced Grievance No. 17-04-112-G concerns Luther being denied the right to wear a turban.

Second, even assuming Grievance No. 17-04-112-G was improperly rejected and assuming that Grievance No. 17-04-112-G concerned Luther being denied the right to wear a turban, it still fails to name a single Defendant. (*See id.*). Instead, the grievance names KSP Chaplain Neese, who is not a party to this action. (*Id.*). The Sixth Circuit has held that "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009)). Here, CPP 14.6(II)(J)(1)(a)(5) states that "[t]he grievant shall include all aspects of the issue and *identify all individuals* in the 'Brief Statement of the Problem.'" (emphasis added). Thus, even if Luther had been permitted to file Grievance No. 17-04-112-G and then made all the appropriate appeals thereafter, he still would have failed to exhaust his administrative remedies because Grievance No. 17-04-112-G fails to name any of the Defendants. Simply put, Grievance No. 17-

04-112-G is irrelevant to the instant lawsuit or why Luther failed to exhaust his administrative remedies against these Defendants prior to filing it. Luther is correct that if an inmate has been thwarted from properly exhausting the grievance process, his failure to exhaust may be excused. However, there must be some connection between the claims allegedly thwarted by prison officials and the claims brought before the court unexhausted. The inmate cannot produce a grievance that mentions the subject matter of the instant claims ambiguously in passing—and which names prison officials entirely different from the named defendants—and expect the Court to excuse his failure to exhaust, at best, tangentially related claims against different officials.

Finally, Luther's argument fails because according to Grievance Coordinator Daniel Smith's affidavit and the handwritten note on the grievance rejection form, which Luther attached to his Response, Luther was free to refile Grievance No. 17-04-112-G. (R. 64, Def.s' Second Mot. for Summ. J., Ex. A Aff. of Daniel Smith; R.81, Pl.s' Resp., Ex. 1, Grievance No. 17-04-112-G). Luther was not thwarted, he simply elected not to refile.

For these reasons, the Court concludes that Grievance No. 17-04-112-G does not support Luther's proposition that he was prevented from exhausting his administrative remedies by Smith. Luther offers no other evidence or argument to rebut the Defendants' properly supported assertion that he failed to completely exhaust his state administrative remedies prior to filing suit in federal court. Therefore, pursuant to the PLRA, the Court must dismiss Luther's claims concerning the right to wear a turban as unexhausted. As such, the Court need not proceed to Defendants' qualified immunity assertion or their failure to exhaust argument. The Defendants are granted summary judgment on Luther's turban claim.

With its ruling, the Court also denies Luther's Motion for Leave to File an Amended Complaint, (R. 22). "The Court is not required to allow amendments that assert obviously

frivolous claims or claims that could not withstand a motion to dismiss." *Neighborhood Development v. Advisory Council, Etc.*, 632 F.2d 21, 23 (6th Cir. 1980). Furthermore, although failure to exhaust is now deemed to be an affirmative defense, the Court may dismiss a claim for failure to exhaust *sua sponte* when the defect appears on the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Attaching Grievance No. 17-10-010-G, Luther's Amended Complaint seeks to add several defendants to his turban claims based on supervisory liability. However, as just discussed, Luther failed to exhaust his administrative remedies concerning being denied a turban based on the untimely filling of Grievance No. 17-10-010-G. Luther cannot append claims to this litigation that have not been properly exhausted. *See, e.g. Utley v. Campbell*, 84 Fed.Appx. 627, 629 (6th Cir. 2003) (The district court properly concluded that the plaintiff "had not exhausted his administrative grievances of the claims he sought to add until after this case was filed, and therefore they could not be appended to this litigation."); see also, *Green v. Tudor*, No. 1:08-cv-51, 2008 U.S. Dist. LEXIS 29556, at *5 (W.D. Mich. Apr. 10, 2008) (denying leave to amend because the claims sought to be added had not been exhausted). Luther's Motion for Leave to File an Amended Complaint is denied as futile.

**B.  Luther's Incense Claims.**

Luther supplemented his original Complaint to add RLUIPA and First Amendment claims against Defendants Dan Smith, Chris Kleymeyer, and Skyla Grief for being denied the right to purchase and use incense. (R. 16, Pl.'s Mot. to Supplement Claims). Although Luther fails to indicate one way or the other, based on Luther's original Complaint, the Court must assume that Luther brings these claims against the Defendants in their official and individual capacities. The Court must also assume, again based on Luther's original Complaint, that Luther

seeks both injunctive and monetary damages. As with Luther's turban claim, before the Court addresses the Defendants' summary judgment arguments, it will narrow the issue by clearing away claims that have already been dismissed and dismissing those bared as a matter of law.

First, to the extent that Luther is claiming injunctive relief under RLUIPA or the Frist Amendment, the issue is moot. KSP has agreed to permit Luther to purchase frankincense and myrrh for congregate use in religious ceremonies under the supervision of KSP officials. (R. 89). Next, the Court already dismissed Luther's claims for monetary damages against the Defendants in their official capacities. (R. 6). Finally, as discussed above, RLUIPA does not permit inmates to recover monetary damages against Defendants in their individual capacities. Thus, the only claims remaining are Luther's First Amendment claims against the Defendants in their individual capacities for monetary damages.

Defendants again argue that they are entitled to summary judgment based on qualified immunity and failure to exhaust administrative remedies. The court will address each argument respectively, starting with exhaustion.

Defendants argue that Luther failed to exhaust his administrative remedies because, according to Grievance Custodian John Dunn's Affidavit, Luther only named Defendant Skyla Grief in his original grievance—not Kleymeyer, Smith, *and* Grief. (R. 64, Def.s' Second Mot. for Summ. J., Ex. B Aff. of John Dunn). Therefore, according to the Defendants, Luther has failed to satisfy CPP 14.6(II)(J)(1)(a)(5)'s requirement that he name "all individuals" in his original grievance. Furthermore, Defendants argue that because he failed to name any of the Defendants in appealing his grievance, Luther failed to receive a substantive response at every step of the grievance process.

Conversely, relying primarily on the *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th

Cir. 2010) and this Court's Opinion in *Sublett v. White*, No. 5:12-CV-180-R, 2014 U.S. Dist. LEXIS 24926 (W.D. Ky. Feb. 26, 2014), Luther argues that he has not failed to exhaust his administrative remedies because the KSP officials have waived CPP 14.6(II)(J)(1)(a)(5)'s procedural requirement by responding to his grievance on its merits. The Court disagrees.

The PLRA requires inmates to *properly* exhaust their administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93-5 (2006). To properly exhaust the inmate must "'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. at 88). Therefore, to properly exhaust, Luther was required to comply with CPP 14.6(II)(J)(1)(a)(5) and name in his first grievance all individuals involved. *See Brock v. Wright*, No. 4:15CV-P65-JHM, 2017 U.S. Dist. LEXIS 28755, at *15 (W.D. Ky. Mar. 1, 2017). (dismissing those defendants that the plaintiff had failed to name in his grievance for failure to exhaust). *Reed-Bey* is the exception to the above stated requirement—not the rule. Luther reads *Reed-Bey* too expansively.

In *Reed-Bey* an inmate filed a grievance that failed to specifically identify anyone. Despite its procedural rule that required inmates to identify in their original grievance all parties involved, the prison addressed the grievance on its merits, denying it three times. When the inmate filed suit, the defendants argued that the inmate failed to properly exhaust because he had not named the defendants in his original grievance as required by the applicable procedural rule. In overturning the district court's summary judgement, the Sixth Circuit reasoned that by addressing the inmate's grievance on its merits the prison necessarily waived its own rule requiring that the inmate name in his original grievance all parties involved. Because it had been waived, the Sixth Circuit refused to enforce the procedural requirement. Thus, the Sixth Circuit

found that the inmate had exhausted his administrative remedies, even though he had failed to specifically identify anyone with his original grievance.

This case is not *Reed-Bey*. Unlike *Reed-Bey*, Luther identified a specific individual with his original grievance—Skyla Grief. (R. 64, Def.s' Second Mot. for Summ. J., Ex. B Aff. of John Dunn). Thus, unlike the Sixth Circuit in *Reed-Bey*, this Court cannot definitively say that KSP officials waived CPP 14.6(II)(J)(1)(a)(5)'s procedural requirement that Luther identify all individuals with his original grievance. Rather, it is possible, in fact likely, that KSP officials assumed Skyla Grief was the only party involved, and therefore, Luther had named all relevant parties, thereby satisfying CPP 14.6(II)(J)(1)(a)(5). By Luther's logic, *Reed-Bey* effectively deprives all KSP employees, regardless of direct involvement, the right to defend on exhaustion grounds. Simply put, because Luther named a specific individual, *Reed-Bey* is not applicable here. *See Ewing v. Finco*, No. 1:17-cv-505, 2018 U.S. Dist. LEXIS 169240, at *10 (W.D. Mich. Sep. 1, 2018) (coming to the same conclusion).

Whereas Luther reads *Reed-Bey* too expansively, he misreads *Sublett*. In dicta, this Court in *Sublett* mentions *Reed-Bay* because the defendants in *Subett* argued that the plaintiff had not exhausted because he failed to name all the defendants in his original grievance as required by KSP grievance procedures. The Court further remarked—in dicta—that whether the plaintiff exhausted, in light of *Reed-Bay*, would be close call. However, the Court never had to make that call because the plaintiff in *Sublett* failed to exhaust on other grounds. As such, *Sublett* does not control here. Nor do the Court's remarks, which it made in dicta. Here, the Court finds that Luther has failed exhaust to his administrative remedies against those defendants he failed to identify in his original grievance. *See Brock v. Wright*, 4:15CV-P65-JHM, 2017 WL 812467, at *6 (W.D. Ky. Mar. 1, 2017) (dismissing those defendants the plaintiff had failed to name in his

grievance for failure to exhaust). However, the Court's task is not done.

Luther's original grievance, while failing to identify Kleymeyer and Smith, does identify Greif. (R. 64, Def.s' Second Mot. for Summ. J., Ex. B Aff. of John Dunn). The Defendants argue that Luther failed to exhaust against Greif because, although Luther identified her in his original grievance, he failed to mention her in his administrative appeals. To support their argument, the Defendants cite *Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 17-3569, 2018 U.S. App. LEXIS 13755 (6th Cir. May 23, 2018). The Defendants' reliance on *Marshall* is misguided. The *Marshall* court dismissed defendants who go unnamed throughout the entire grievance process— not just the administrative appeals. *See Marshall* LEXIS 13755 at *9. Thus, *Marshall* does not, as the Defendants suggest, stand for the proposition that an inmate fails to exhaust against a defendant named in the original grievance who then goes unnamed in subsequent administrative appeals. The Court is unaware of any requirement that Luther name each Defendant in his administrative appeals. Nor have the Defendants brought such a requirement to the Court's attention. Thus, while the Court finds that Luther failed to exhaust his administrative remedies against Kleymeyer and Smith, it cannot make such a finding concerning Grief. Therefore, with only Defendant Grief left, the Court proceeds the to Defendants' qualified immunity assertion.

Pursuant to qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847-48 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)

(citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). First, a court must determine whether the facts alleged show that the defendant's conduct violated a constitutional right." *Id.* (citing *Saucier*, 533 U.S. at 201). "If the plaintiff establishes that a constitutional violation occurred, a court must next consider 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to it. *Id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The Court may, in its discretion, decide which of these two inquiries is addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (refining *Saucier*, 533 U.S. at 201). "If the answer to either question is no, then the official is entitled to qualified immunity." *Pickelhaupt v. Jackson*, 364 Fed. Appx. 221, 224 (6th Cir. 2010) (citing *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009)).

Here, the Court starts its analysis with whether there has been a First Amendment Free Exercise violation as Luther alleges. Prisoners are not without the protections of the First Amendment while incarcerated, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974); *Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam). However, such constitutional protections can be limited in the context of valid penological objectives. *O'Lone*, 482 U.S. at 348; *Pell*, 417 U.S. at 822-23. In *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the Supreme Court held that regulations infringing on an inmate's constitutional rights are subject to rational basis review. In other words, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

interest." *Id.* at 89.

However, before the Court determines whether the regulation relates to a legitimate penological interest, the inmate must show that the regulation substantially burdens his religious exercise and that his beliefs are sincerely held. *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S. Ct. 2136, 104 L. Ed. 2d 766 (1989) (to state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice."); *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) ( "[A prisoner] alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'") (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)).

Here, Luther alleges that "the use of incense is imperative to the Rastafari worship services." (R. 16, Pl.'s Mot. to Supplement Claims). The Defendants make no argument to the contrary. Nor have the Defendants challenged the sincerity of Luther's beliefs. Accordingly, the Court assumes that denial of incense substantially burdens Luther's sincerely held religious belief. Thus, the Court is left to determine only whether the denial was "reasonably related to a legitimate penological interest."

The *Turner* Court set forth a four-part test for determining whether a prison's restrictions on a constitutional right, such as Free Exercise, are reasonably related to a legitimate penological interest. First, "there must be a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S. Ct. 3227, 82 L. Ed. 2d 438 (1984)). Second, in determining whether a restriction is reasonable, the court must ask "whether there are alternative

means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the court must also consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, the Court instructed that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," but that "[b]y the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." *Id.* (citation omitted). However, a "trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). If there is no rational connection between the prison regulation and the legitimate government interest put forward to justify it, "the regulation is unconstitutional, and the other factors do not matter." *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (citing *Turner*, 482 U.S. at 89). For an example of the Supreme Court's application of the *Turner* factors to a Free Exercise case, *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987).

Unfortunately, due to the deficiency of the Defendants' argument and their failure to reply, the Court is unable to adequately consider the *Turner* factors because the Defendants have put forward no interest to justify the regulation at issue. The Defendants assumed with their Second Motion for Summary Judgment that Luther requested the incense for personal use within his cell, and they provided a legitimate government interest in denying that request—inmate and prison safety. However, Luther clarified in his Response to the Defendants' Second Motion for Summary Judgment that he was not seeking the incense for personal use within his cell. He requested the incense to be used in the Inmate Religious Center ("IRC") and under supervision. (R.81, Pls.' Resp.). He also alleged, with his Response that Native American inmates are permitted to burn sage in the IRC under supervision. (*Id.*). The Defendants failed to reply to

Luther's Response. As such, they have put forward no penological interest to justify denying Luther the incense as he requested it—within the IRC and under supervision.

The Court notes that it is aware that a plaintiff may not expand his claims to assert new legal theories in response to a motion for summary judgment. *See Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). However, as a pro se litigant, the Court is required to construe Luther's claims liberally. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). In his Motion to Supplement, Luther states that he was mailed a memorandum via Defendant Dan Smith "concerning the ability to purchase incense for the Ras Tafari *community*." (R. 16, Pl.'s Mot. to Supplement) (emphasis added). He also states that "the Kentucky Department of Corrections Religious Reference Manual, which acts as the religious authority in the KDOC, states 'incense' is a *congregate* item for Ras Tafari. However, Defendant Skyla Greif informed Defendant Dan Smith that Ras Tafari shall not be permitted to purchase such 'incense', and consequently, Defendant Dan Smith Denied the Plaintiff his rights to purchase and use the sacred incense." (*Id.*) (emphasis added). Construing Luther's Supplemental Complaint liberally, it suggests that Luther requested the incense as a congregate use item—not an item for individual use within his cell. Luther's Response does not assert a new legal theory, it merely clarifies the claim already laid out in his Supplemental Complaint.

While the Court is required to grant *pro se* inmates wide latitude, it cannot do the same for the Defendants, whom are represented by legal counsel. The Court will not guess as to what interest KSP officials, or Greif specifically, had in denying Luther incense under supervision within the IRC while allowing other inmates to participate in a similar activity.

Even if the Court were to assume the legitimate penological interest at issue was prison

safety, the Court finds there would be no valid rational connection between denying Luther incense and prison safety if other inmates are indeed allowed to burn sage grass, as claimed by Luther. Moreover, the Defendants fail to even address any of the other *Turner* factors. Thus, given the Defendants' failure to assert a legitimate penological interest, and viewing the facts in the light most favorable to Luther, the Court is forced to conclude that Luther has successfully alleged a First Amendment Free Exercise Clause violation at this time.

Having found that Luther has alleged a constitutional violation, the Court must next determine whether the right violated was clearly established. To be clearly established "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "'Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.'" *Toms v. Taft*, 338 F.3d 519, 525 (6th Cir. 20030 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002)). Courts need not have ruled in favor of a prisoner under precisely the same factual circumstance in order for the right to be clearly established. *See Anderson*, 483 U.S. at 640. Ultimately, qualified immunity seeks to ensure that defendants "reasonably can anticipate when their conduct may give rise to liability." *Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

Here, the Defendants could have reasonably anticipated that their alleged conduct would give rise to liability. The Defendants allegedly denied Luther incense imperative to his religious ceremony. As discussed above, the Defendants fail to put forward a legitimate penological interest on which their denial was predicated. Thus, viewing the facts most favorably to Luther, the Court must assume at this time that the denial was arbitrary, especially considering that

Native American inmates are allegedly permitted to burn sage grass. The law makes it sufficiently clear that in order to substantially burden sincerely held religious beliefs, prison officials must at least put forth some legitimate penological interest. *See e.g. O'Lone*, 482 U.S. at 350-53; *Hayes v. Tennessee*, 424 F. App'x 546, 550 (6th Cir. 2011) (both holding that a regulation that impinges upon an inmate's free exercise is valid *if it reasonably relates to legitimate penological interests*). Thus, a reasonable official would know, absent a legitimate penological interest, denying Luther incense imperative to his religious ceremony would violate his right to free exercise under the First Amendment. As such, the right allegedly violated by the Defendants was clearly established, and qualified immunity is inappropriate. Luther's First Amendment claim for money damages against Defendant Skyla Grief for denying him the right to purchase and use incense will proceed at this time. However, Greif is granted permission to refile so as to provide the Court with proof that she denied Luther's request for incense to be used in the IRC and under supervision pursuant to some legitimate penological interest.

### C. Luther's Dreadlocks Claims.

Luther named four Defendants in his claims concerning the forcible removal of his dreadlocks: Lieutenant Terry Peede, Lieutenant Jessie Coombs, Sergeant Gage Rodriguez, and Warden Randy White. (R. 1, Pl.'s Compl.). Luther appears to be claiming that all the Defendants violated his First Amendment Free Exercise rights, rights under RLUIPA, and Fourteenth Amendment rights. Additionally, Luther appears to bring a deliberate indifference claim, as well as a deliberate indifference to medical need claim, against Rodriguez. Luther seeks both monetary damages and injunctive relief and sues each Defendant in both their individual and official capacities. (*Id.*).

Again, the Court will narrow Luther's claims as much as possible before addressing the

Defendants' arguments for summary judgment. The Court has already dismissed Luther's claims for monetary damages against the Defendants in their official capacities. (R. 6). Also, as previously discussed, RLUIPA does not allow recovery of monetary damages against defendants in their individual capacities. Thus, the following claims remain: First and Fourteenth Amendment claims for monetary damages against Jessie Combs in his individual capacity; First and Fourteenth Amendment claims for monetary damages against Terry Peede in his individual capacity; First and Fourteenth Amendment claims for monetary damages against Randy White in his individual capacity; Fourteenth and First Amendment, deliberate indifference, and deliberate indifference to medical need claims against Gage Rodriguez in his individual capacity; And Finally, a RLUIPA claim for injunctive relief, which challenges the KSP policy prohibiting inmates from wearing dreadlocks in the Restrictive Housing Unit.

With Luther's claims now sorted out as best the Court can tell, the Court turns to the Defendants Second Motion for Summary Judgment. The Defendants make various arguments concerning each of Luther's claims. The Court will address them one at a time.

First, the Defendants argue that Luther failed to properly exhaust his administrative remedies concerning the deliberate indifference claims against Defendant Rodriguez. The Defendants, supported by Grievance Custodian John M. Dunn's affidavit, allege that Luther's grievance regarding his dreadlocks failed to directly address, or even imply, deliberate indifference. (R. 64, Def.s' Second Mot. for Summ. J., Ex. B Aff. of John Dunn). According to the Defendants, Luther's Complaint is the first time he alleges that Rodriguez "yanked" on his hair, that the clippers were unsanitary, that he received lacerations, developed a rash, or that he was denied medical treatment. Thus, the Defendants claim that Luther failed to comply with CPP 14.6(II)(J)(1)(a)(5), which requires that "the grievant shall include all aspects of the issue."

As the Court has already discussed, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007). As such, to properly exhaust Luther must have complied with CPP 14.6(II)(J)(1)(a)(5). According to Grievance Custodian John Dunn, Luther did not. According to Dunn's affidavit, Luther's grievance did not mention that Rodriguez yanked his hair, that the clippers were unsanitary, that he received laceration, that he developed a rash, or that he was denied medical treatment. (*Id.*). Luther presents no evidence to the contrary.

Ultimately, the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) (quoting *Reed-Bey* 603 F.3d at 324-25). By failing to Comply with CPP 14.6(II)(J)(1)(a)(5), Luther deprived Defendant Rodriguez such an opportunity concerning the deliberate indifference claims. Therefore, Luther failed to exhaust his administrative remedies concerning his deliberate indifference claims against Defendant Rodriguez, and summary judgment is appropriate. The deliberate indifference claims against Rodriguez are dismissed.

Next the Defendants, again relying on *Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 17-3569, 2018 U.S. App. LEXIS 13755 (6th Cir. May 23, 2018), argue that Luther failed to exhaust because he failed to identify any of the Defendants at every step of the grievance process. According to Grievance Custodian John Dunn's affidavit, Luther failed to mention Defendant Peede in his original grievance and the administrative appeals process, only mentioned

Defendant White to request redress from him as Warden in his second administrative appeal, and failed to mention Defendants Coombs and Rodriguez in his administrative appeals. (*Id.*). Luther again relies on *Reed-Bey* to argue that KSP officials waived CPP 14.6(II)(J)(1)(a)(5).

*Marshall*, as the Court has already made clear, does not stand for the proposition that inmates must specifically identify each defendant during each administrative appeal to have properly exhausted their administrative remedies, nor is the Court aware of any KSP procedure that would require them to. Luther identified Rodriguez and Coombs in his original grievance as required by CPP 14.6(II)(J)(1)(a)(5), and Luther appealed that grievance completely as described by CPP 14.6. (*Id.*). Thus, Luther properly exhausted his administrative remedies against Coombs and Rodriguez.

Peede and White, on the other hand, are not identified by Luther's original grievance according to Grievance Custodian Dunn's affidavit. (*Id.*). Luther presents no evidence to contradict Dunn's affidavit. As already discussed, "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009)). CPP 14.6(II)(J)(1)(a)(5) requires that a grievant name "all individuals" within his original grievance. Because Luther failed comply with the CPP 14.6(II)(J)(1)(a)(5), Peede and White were not given a fair opportunity to address any potential claims against them. Thus, Luther failed to exhaust his administrative remedies against Peede and White.

Next the Defendants argue that they are entitled to qualified immunity. The Defendants start by arguing that Luther has no First Amendment right to be exempted from prison grooming standards based on the Free Exercise Clause. They cite appropriate case law coming from both

this Court and the Sixth Circuit. But then the Defendants spend considerable effort of their brief, under the heading "Defendants Are Entitled to Qualified Immunity," trying to distinguish the instant case from *Holt v. Hobbs*, 135 S.Ct. 853, 190 L.Ed.2d 747 (201) in which the Supreme Court invalidated a prison grooming policy pursuant to RLUIPA. This confuses the Court.

Because RLUIPA does not allow for monetary damages, qualified immunity—which shields defendants *only* from monetary damages—is irrelevant with regards to RLUIPA claims. *See Tormasi v. Lanigan*, No. 18-1203 (FLW) (TJB), 2019 U.S. Dist. LEXIS 13028, at *27 n.8 (D.N.J. Jan. 28, 2019) ("As noted above, a RLUIPA plaintiff may seek only injunctive or declaratory relief, whereas qualified immunity applies only to claims for damages. Thus, the Court's finding as to qualified immunity had no effect on Tormasi's RLUIPA claims.") (internal citations omitted); *accord Booker v. Engelke*, Civil Action No. 7:16-cv-00084, 2018 U.S. Dist. LEXIS 46918, at *13 n.8 (W.D. Va. Mar. 22, 2018) (". . . [A]lthough qualified immunity is not applicable in the absence of an action for damages under RLUIPA."). Thus, to the extent Defendants argue they are entitled to qualified immunity on Luther's RLUIPA claims, such an argument is misguided. However, the Court finds it unlikely that the Defendants are attempting to make such an argument.

The Court finds it more likely that because the First Amendment and RLUIPA are so closely related, the Defendants assumed the Supreme Court's Holding in *Holt*, which pertained to inmates' rights under RLUIPA, somehow affected inmates' rights under the First Amendment. To extent that was assumed, such an assumption is mistaken. While First Amendment jurisprudence may inform RLUIPA jurisprudence, RLUIPA and the First Amendment remain two distinct causes of action and require the Court to engage in two very distinct analysis. *See* 42 U.S.C. § 2000cc-2(a); *Sossamon v. Texas*, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). RLUIPA

provides inmates broader protection than the First Amendment Free Exercise Clause. *Goddard v. Alexakos*, Civil Action No. 5: 16-215-KKC, 2018 U.S. Dist. LEXIS 36322, at *32 (E.D. Ky. Mar. 6, 2018) (citing *Holt v. Hobbs*, 135 S. Ct. 853, 859-60 (2015)). As such, RLUIPA requires that any substantial burden placed on an inmate's religious exercise be in furtherance of a compelling governmental interest and requires the prison regulation to be the least restrictive means of achieving that governmental interest. *See* 42 U.S.C. § 2000cc-1(a). In other words, RLUIPA demands something close to a strict scrutiny analysis. On the other hand, in evaluating a Free Exercise claim under the First Amendment, "if a prison regulation substantially infringes on an inmate's First Amendment rights, 'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Goddard v. Alexakos*, Civil Action No. 5: 16-215-KKC, 2018 U.S. Dist. LEXIS 36322, at *31 (E.D. Ky. Mar. 6, 2018) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In other words, something close to a rational basis analysis. Due to the differing levels of scrutiny, in many instances, prison officials' conduct may violate an inmate's rights under RLUIPA, but not under the First Amendment. Accordingly, *Holt* has no bearing on whether a right has been clearly established under the First Amendment for the purposes of qualified immunity. Thus, the Court will ignore the Defendants' attempt to distinguish this case from *Holt* with regards to qualified immunity.

In any event, the Court agrees that the remaining Defendants, Coombs and Rodriguez, are entitled to qualified immunity on Luther's First Amendment claims. As previously discussed, "The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity." *Austin*, 690 F.3d at 496 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). First, a court must determine whether the facts alleged show that the defendant's conduct violated a constitutional right. *Id.*

(citing *Saucier*, 533 U.S. at 201). "If the plaintiff establishes that a constitutional violation occurred, a court must next consider 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). The Court may, in its discretion, decide which of these two inquiries is addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (refining *Saucier*, 533 U.S. at 201).

Here, the Court finds it most efficient to address qualified immunity's second prong first. There is no clearly established right to be exempt from prison grooming standards under the First Amendment's Free Exercise Clause. Time and time again courts in this circuit, including this one, have upheld prison grooming standards concerning hairstyle in the face of Free Exercise challenges. *See Price v. White*, No. 5:13-CV-00076-TBR, 2014 U.S. Dist. LEXIS 70133 (W.D. Ky. May 21, 2014); *Oakes v. Green*, 2008 U.S. Dist. LEXIS 15106, 2008 WL 559683, at *4 (E.D. Ky. Feb. 27, 2008); *Flagner v. Wilkinson*, 241 F.3d 475 (6th Cir. 2001); *Williams v. Wilkinson*, 96-3715, 1997 U.S. App. LEXIS 36760 (6th Cir. Dec. 18, 1997); *Phipps v. Parker*, 879 F. Supp. 734 (W.D. Ky. 1995); *Pollock v. Marshall*, 845 F.2d 656 (6th Cir. 1988).

Furthermore, Luther bears the burden of showing that the right is clearly established. *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). He has not. He relies primarily on *Holt* for the proposition that he has a right to wear his hair in dreadlocks pursuant to his religious faith. Like the Defendants, he has conflated established rights under RLUIPA with established rights under the First Amendment. Defendants Rodriguez and Coombs are entitled to qualified immunity, and Luther's First Amendment claims for monetary damages are dismissed.

However, Luther's Fourteenth Amendment Due Process Claims for monetary damages, which the Defendants have not addressed with their Second Motion for Summary Judgment, will proceed against those Defendants against whom Luther has properly exhausted his

administrative remedies—Coombs and Rodriguez. Luther's First Amendment and RLUIPA claims for injunctive relief shall also proceed.

**D. Luther's Stolen Religious Property Claims.**

Luther initially brought claims for money damages against the Defendants both in their individual and official capacities under the First Amendment, Fourteenth Amendment, and RLUIPA. (R. 1, Pl.'s Compl.). As has been repeatedly discussed, the official capacity claims have already been dismissed and RLUIPA does not allow for monetary damages. Thus, the only claims left are the First and Fourteenth Amendment claims against the Defendants in their individual capacities. Defendants argue they are entitled to summary Judgment on these remaining claims for various reasons.

First, the Defendants argue that Luther failed to exhaust his administrative remedies. Grievance Coordinator Daniel Smith avers that Luther did not file a grievance relating to the confiscation of his property until April 10, 2017. (R. 64, Def.s' Second Mot. for Summ. J., Ex. A Aff. of Daniel Smith). The confiscation was alleged to have occurred on the January 15, 2017. (R.1, Pl.'s Compl.). As such, the grievance from April was rejected as untimely. (R. 64, Def.s' Second Mot. for Summ. J., Ex. A Aff. of Daniel Smith). However, Luther alleges in his verified Complaint that Smith thwarted his opportunity to take advantage of the grievance process by never providing a response to his January 15, 2017 grievance. (R. 1, Pl.'s Compl.).

This is distinguishable from Luther's claim that he was thwarted with regard to his turban claims. There Luther claimed that he could not take advantage of the grievance process for a specific reason—Smith improperly rejected a grievance. The grievance rejected, however, was irrelevant to the Claims for which Luther sued, and even had Luther been permitted to file the grievance in question, it would not have properly exhausted the claims presently before the

Court. Therefore, the Court was able to conclude that Luther's failure to exhaust was not due to Smith's alleged thwarting.

Here, on the other hand, Luther alleges that he was thwarted because he filed a grievance and received no response. The Defendants claim that he never filed such a grievance. Thus, the Court is left with nothing more than a he said she said situation in which Luther avers he was thwarted, and the Defendants say that he was not.

However, the Court finds that regardless of whether Luther exhausted his administrative remedies, his claims against the Defendants for confiscating his property must be dismissed. After making their exhaustion argument, the Defendants argue that Luther's claims related to his confiscated property must be dismissed because he fails to allege any facts regarding the named Defendant's personal involvement. The Court agrees.

The Court must construe *pro se* complaints liberally. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). However, the *pro se* plaintiff is, at a minimum, required to show how each Defendant is accountable based on personal involvement in the conduct complained of. *See Benningfield v. S. Health P'ship,* No. 4:13CV-P3-M, 2013 U.S. Dist. LEXIS 116823, at *8 (W.D. Ky. Aug. 19, 2013); *Ridgeway v. Kentucky*, 510 F. App'x 412, 413 (citing Rizzo v. Goode, 423 U.S. 362, 373-77, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976)).

Here, the only two individuals named are H.C. Vinson and Daniel Smith. (R.1, Pl.'s Compl.). H.C. Vinson is not a named Defendant in this matter, and Daniel Smith is only identified as having thwarted Luther's grievance. (*Id.*). Smith is not named in connection with the confiscation. Luther in no way alleges how any of the named Defendants participated in the confiscation of his property. (*See id.*)

Furthermore, Luther fails to allege that his property was improperly confiscated. Luther

claims that H.C. Vinson told him that the reasons for confiscating his medallion and headgear were: "Your medallion is homemade because it has beads, and you were over-the-limit for religious headwear." (*Id.*). Luther then claims that CPP 23.1 states that inmates may have three religious headgears and that the Kentucky Department of Corrections Religious Reference Manual does not require a specific type of medallion. (*Id.*). But Luther never alleges how the confiscation of his property violates either of these policies. (*See id.*).

Even if the Court assumes that Luther is challenging the policies themselves as violating his free exercise rights under the First Amendment, Luther has failed to allege how the policies or the confiscation of his property substantially burden his religious exercise. Similarly, Luther fails to provide any facts suggesting a Due Process violation. Therefore, Luther's claims concerning the confiscation of his property are dismissed.

### E. Luther's Religious Diet Claims

The Defendants argue that Luther's claims for allegedly being denied a diet in conformity with his religious beliefs must be dismissed. Luther's claims regarding his diet were already dismissed pursuant to the Court's 28 U.S.C. § 1915A review. (R. 6).

## CONCLUSION

For the reasons stated herein, Defendants' Second Motion for Summary Judgment, (R. 64), is **GRANTED IN PART and DENIED IN PART**.

**IT IS HEREBY ORDERED**:

1. The following claims shall proceed at this time:

    a. Luther's First Amendment claim for monetary damages against Defendant Skyla in her individual capacity for being denied the right to purchase and use incense for the purposes of religious ceremony.

b. Luther's Fourteenth Amendment claims for monetary damages against Defendant Jesse Coombs in his individual capacity for the removal of his dreadlocks.

c. Luther's Fourteenth Amendment claims for monetary damages against Defendant Gage Rodriguez in his individual capacity for the removal of his dreadlocks.

d. Luther's First Amendment and RLUIPA claims for injunctive relief concerning the right to wear dreadlocks in contravention of prison policy.

2. All Luther's remaining claims are **DISMISSED with prejudice**.

3. Luther's Motion for Leave to File and Amended Complaint, (R. 22), is **DENIED**.

4. Luther's Motion for Preliminary Injunction, (R. 11), is **DENIED AS MOOT**.

5. The Clerk of Court is **DIRECTED to terminate** the Following Defendants:

a. Defendant Terry Peede

b. Defendant Chris Kleymeyer

c. Defendant Randy Whit

d. Defendant Dan Smith

6. **A telephonic conference is set March 18, 2019 at 2:00 p.m. CDT. Counsel and plaintiff must call 1-877-848-7030 then give the Access Code 2523122 and #, then when prompted press # again to join the call.**
**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 6, 2019

cc.   **Dion L. Luther**
**275398**
**KENTUCKY STATE PENITENTIARY**
**266 Water Street**
**Eddyville, KY 42038**
**PRO SE**