UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF
KENTUCKY AT PADUCAH
CIVIL ACTION NO. 5:17-CV-138-TBR

DION L. LUTHER                                                                                                   PLAINTIFF

v.

RANDY WHITE, et al.                                                                                         DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Defendant Skyla Grief's Third Motion for Summary Judgment. (R. 99). Plaintiff Dion L. Luther, proceeding *pro se*, has responded, (R. 102), and Greif's time to reply has lapsed. As such, this matter is ripe for adjudication and, for the following reasons, **IT IS HEREBY ORDERED** that Grief's Motion (R. 99) is **GRANTED.**

**BACKGROUND**

Inmate and *pro se* Plaintiff, Dion L. Luther, has filed suit against various prison officials at Kentucky State Penitentiary (KSP), including Defendant Skyla Grief, bringing a bevy of claims all relating to events that Luther claims infringed upon his right to practice Bobo Shanti Rastafarianism while incarcerated. At this stage of the proceedings, the only claim remaining against Defendant Grief is a First Amendment claim for monetary damages stemming from her denying Luther the right to purchase and burn incense under supervision in the Inmate Religious Center as a congregate use item.

On February 8, 2019, the Court denied Grief summary judgment on Luther's First Amendment claim in large part because Grief's motion for summary judgment, without support, started from the premise that Luther had requested incense for personal use and to burn in his cell.

1

However, Luther's Response alleged that he had requested the incense for congregate use and to be burned in the Inmate Religious center. Luther's Response also provided the Court with evidence that, while he was denied the right to burn incense due to fire-safety concerns, Native American inmates were permitted to burn sage-grass under supervision within the Inmate Religious Center. Grief failed to counter either of these allegations with evidence to the contrary. In fact, Grief failed to reply altogether. With evidence that other inmates were permitted to burn substances within the Inmate Religious Center and without Grief providing a legitimate penological interest in denying Luther that same right, the Court was forced, for the purposes of summary judgment, to construe Grief's denial as arbitrary infringement upon Luther's sincerely held religious beliefs. Thus, the Court denied Grief's motion for summary judgment. But the Court also granted Grief leave to refile so as to properly respond to Luther's supported arguments and provide the Court with proof that she denied Luther's request for incense pursuant to some legitimate penological interest. Accordingly, Grief now files the instant Third Motion for Summary Judgment, and again moves the Court to dismiss Luther's First Amendment claim against her.

It is also important to note by way of background that a settlement conference was held between the Parties at KSP on January 4, 2019. At the settlement conference, Luther explained that the Rastafarian faith requires its practitioners to smoke marijuana to "commune with god." However, some Rastafarians use the smoke from incense to simulate the smoke from marijuana. Thus, Luther explained the scented oils Greif had offered instead of the incense were not an adequate substitution because he needed the smoke, not necessarily the scent, from the incense. Upon understanding that the smoke, not just the scent, was integral to Luther's religious practice, the Defendants indicated at the settlement conference that they would allow Luther to purchase

the incense for congregate use and allow Luther to burn the incense under supervision within the Inmate Religious Center, just as the Native American inmates are permitted to burn sage-grass.

**STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

As the party moving for summary judgment, Grief must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Luther's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Assuming Grief satisfies her burden of production, Luther "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

Grief's argument as advanced in her Third Motion for Summary Judgment essentially boils down this: At the time Luther requested the incense, Grief understood, or more accurately misunderstood, Luther to require the incense for its smell—not its smoke. Therefore, Greif denied Luther the incense but instead offered him scented oils. It was not until the January fourth settlement conference that Grief learned the smoke produced by the incense was integral to Luther religious exercise. Given Grief's misunderstanding, her denying Luther incense was a rational restriction on Luther's Free Exercise rights reasonably related to a legitimate penological interest—namely fire-safety. Moreover, the scented oil Grief offered instead of incense was a reasonable accommodation. Grief argues separately that she is entitled to qualified immunity.

Importantly, while Grief's Third Motion for Summary Judgment depends only on the misunderstanding detailed above, Grief's affidavit identifies a second misunderstanding allegedly held by Grief. According to Grief's affidavit, prior to the January fourth settlement conference, she also thought that Luther wanted the incense for personal use because Luther did not follow the institutional procedure for purchasing congregate use items when he purchased the incense.

Luther's Response only addresses this second misunderstanding, and fails to address the more important one, upon which Grief's Third Motion for Summary Judgment is predicated. Luther never challenges Grief's claim that she did not know the smoke from the incense was integral to Luther's religious practice. He never claims to have explained this to her or presents any evidence that would otherwise indicate Grief was aware of this fact. Instead, Luther argues that Grief did in fact know that Luther wanted the incense for congregate use within the Inmate Religious Center and therefore, Grief's Motion should be denied. While the Court indeed finds

there to be a factual dispute as to whether Greif knew Luther wanted the incense for congregate use, for the reasons that follow, the Court must nonetheless dismiss Luther's First Amendment Free Exercise Claim against Grief.

As the Court has already noted in this case, prisoners are not without the protections of the First Amendment while incarcerated, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974); *Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam). However, such constitutional protections can be limited in the context of valid penological objectives. *O'Lone*, 482 U.S. at 348; *Pell*, 417 U.S. at 822-23. In *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the Supreme Court held that regulations infringing on an inmate's constitutional rights are subject to rational basis review. In other words, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest." *Id.* at 89.[1]

The *Turner* Court set forth a four-part test for determining whether a prison's restrictions on a constitutional right, such as Free Exercise, are reasonably related to a legitimate penological interest. First, "there must be a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S. Ct. 3227, 82 L. Ed. 2d 438 (1984)). Second, in

---

[1] Prior to the determining whether the regulation relates to a legitimate penological interest, the inmate must show that the regulation substantially burdens his religious exercise and that his beliefs are sincerely held. *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S. Ct. 2136, 104 L. Ed. 2d 766 (1989) (to state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice."); *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) ( "[A prisoner] alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'") (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). However, Greif does not dispute that Luther's beliefs are sincerely held. Nor does she dispute that denying Luther incense substantially burdened his religious exercise. Thus, the only question is whether denying Luther incense was reasonably related to a legitimate penological interest.

determining whether a restriction is reasonable, the court must ask "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the court must also consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, the Court instructed that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," but that "[b]y the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." *Id.* (citation omitted). Importantly, a "trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). If there is no rational connection between the prison regulation and the legitimate government interest put forward to justify it, "the regulation is unconstitutional, and the other factors do not matter." *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (citing *Turner*, 482 U.S. at 89). For an example of the Supreme Court's application of the *Turner* factors to a Free Exercise case, *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987).

Here, before considering the *Turner* factors, the Court must address Grief's alleged understanding of the circumstances. As already discussed above, Grief contends that she denied Luther the right to purchase and burn incense because she was unaware that burning the incense was necessary to Luther's religious practice, and only if fire was necessary for the inmate's religious practice, such as the Native Americans needing fire to burn sage-grass, would a KSP inmate be permitted to handle fire within the prison. Two things support Grief's alleged understanding of the circumstances: First, Grief's own affidavit, and second, the fact that once the Defendants learned at the January fourth settlement conference that Luther's religious practice required the smoke—not the smell—from the incense, the Defendants, including Grief, indicated

6

that Luther would then be permitted to burn the incense under supervision within the Inmate Religious Center. Luther offers no evidence or argument to suggest Grief, prior to the January fourth settlement conference, understood Luther's religious practice to require the smoke produced by burning the incense. Therefore, the Court accepts as true Grief's alleged understanding that Luther required the incense for its smell, not for its smoke. With that in mind, the Court turns to the *Turner* factors.

Given Grief's understanding of the circumstances at the time she restricted Luther's religious exercise, the *Turner* factors weigh in her favor. First, there is a "valid rational connection" between the restriction on Luther's religious exercise and the legitimate governmental interest put forward by Grief to justify it. Grief denied Luther access to fire because she did not believe him to require it. She contends that denying inmates access to fire unless absolutely necessary for their religious practice promotes inmate and staff safety. The Court, granting appropriate deference to Grief as a prison official, agrees. *See Walker v. Mintzes*, 771 F.2d 920, 930 (6th Cir. 1985). ("When determining whether a particular restriction is reasonably related to prison security, the court should give considerable deference to prison administrators' expertise."). Obviously, to permit Luther access to fire when he did not require it would pose a substantial safety risk. Moreover, given Greif's understanding that Luther required the incense for the smell, the scented oils offered to Luther would have allowed him an alternative means of exercising his religion. Thus, the Court is satisfied that, given Grief's understanding of the circumstances at the time, her restriction on Luther's right to Free Exercise under the Frist Amendment was reasonably related to a legitimate penological interest—namely fire-safety within KSP. As such, Luther's First Amendment claim against Grief must be dismissed. The Court need not proceed to Grief's qualified immunity assertion.

## IV. Conclusion

For the foregoing reasons, Defendant Skyla Grief's Third Motion for Summary Judgment, (R. 99), is HEREBY GRANTED.

The Clerk of Court is HEREBY DIRECTED to TERMINATE Defendant Grief from this action.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 21, 2019

cc:  Dion L. Luther
     275398
     KENTUCKY STATE PENITENTIARY
     266 Water Street
     Eddyville, KY 42038
     PRO SE